1   BRIAN J. MOONEY (SBN: 143795)
    bmooney@gordonrees.com
2   EDWARD FITZGERALD (SBN: 227218)
    efitzgerald@gordonrees.com
3   GORDON & REES LLP
    275 Battery Street, Suite 2000
4   San Francisco, CA  94111
    Telephone:  (415) 986-5900
5   Facsimile:  (415) 986-8054

6   Attorneys for Defendant
    ABBOTT LABORATORIES INC.
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  JESSICA L. TOSH-SURRYHNE, individually  )   CASE NO.  10-cv-02603-FCD-EFB
    and on behalf of all others similarly situated;  )
12                                          )   **MEMORANDUM OF LAW IN**
                        Plaintiff,          )   **SUPPORT OF DEFENDANT ABBOTT**
13                                          )   **LABORATORIES INC.'S MOTION TO**
                        vs.                 )   **DISMISS PLAINTIFF'S FIRST**
14                                          )   **AMENDED COMPLAINT**
    ABBOTT LABORATORIES INC. d/b/a          )
15  ABBOTT SALES, MARKETING &               )   **Accompanying Documents**:  Notice of
    DISTRIBUTION CO., a Delaware corporation,  )   Motion and Motion to Dismiss; Request for
16                                          )   Judicial Notice; Appendix of Unpublished
                        Defendant.          )   Authority
17                                          )
                                            )   Date: January 28, 2011
18                                          )   Time: 10:00 a.m.
                                            )   Department: 2
19                                          )
                                            )   Filed: September 24, 2010
20                                          )
                                            )
21  _____)

22

23

24

25

26

27

28
    ───────────────────────────────────────────────────────
    MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
    MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

Page No.

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .........................................................................................................2

ARGUMENT ...............................................................................................................4

I.  Because Tosh-Surryhne's Allegations Do Not Plausibly Establish A Particularized Injury, She Lacks Standing To Bring Any Of Her Claims...............4

II.  Tosh-Surryhne Does Not State A Claim For Breach Of Express Warranty............9

III.  Tosh-Surryhne Does Not State A Claim For Breach Of Implied Warranty ..........12

    A.  Implied Warranty of Merchantability .......................................................12

    B.  Implied Warranty of Fitness For A Particular Purpose .............................13

IV.  Tosh-Surryhne Does Not State A Claim For "False And Misleading Advertising".................................................................................................14

V.  Tosh-Surryhne Does Not State A Claim Under California's Unfair Competition Law .......................................................................................16

VI.  Tosh-Surryhne Does Not State A Claim For Fraudulent Concealment.................17

VII.  The Complaint Does Not State A Claim For Unjust Enrichment.........................18

VIII.  Tosh-Surryhne Is Not Entitled To Injunctive Relief...........................................19

CONCLUSION...........................................................................................................20

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF AUTHORITIES

**Page No.**

1

**Cases**

2   *AcraDyne, Inc. v. Travelers Cas. & Sur. Co. of Am.*
        363 F. App'x 594 (9th Cir. 2008) .......................................................................... 19

3

4   *Aleksandrov v. Chevrolet Motor Division*
        116 F.3d 482, 1997 WL 303257, at *2 (9th Cir. 1997) ..................................... 1, 5, 6

5   *Am. Home Assur. Co. v. Donaldson Co.*
        No. EDCV 08-762-VAP, 2008 WL 4793672, at *2 (C.D. Cal. 2008) ..................................... 13

6

7   *Am. Suzuki Motor Corp. v. Superior Court*
        37 Cal. App. 4th 1291, 44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995) ..................................... 9, 13

8   *Arata v. Tonegato*
        152 Cal. App. 2d 837, 841, 314 P.2d 130 (1957) ..................................... 12

9

10   *Ashcroft v. Iqbal*
        129 S. Ct. 1937 (2009) ..................................... 5, 6, 7, 8, 9, 15

11   *Bailey v. Monaco Coach Corp.*
        350 F. Supp. 2d 1036 (N.D. Ga. 2004) ..................................... 5, 6

12

13   *Bank of the West v. Superior Court*
        2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992) ..................................... 14, 17

14   *Bell Atl. Corp. v. Twombly*
        550 U.S. 544, 570 (2007) ..................................... 5, 7, 8, 9

15

16   *Birdsong v. Apple, Inc.*
        590 F.3d 955 (9th Cir. 2009) ..................................... 14, 15, 16

17   *Branick v. Downy Sav. & Loan Ass'n*
        39 Cal. 4th 235, 46 Cal. Rptr. 3d 66, 138 P.3d 214 (2006) ..................................... 15

18

19   *Brewer v. Indymac Bank*
        609 F. Supp. 2d 1104 (E.D. Cal. 2009) ..................................... 14

20   *Brinkman v. Shiley, Inc.*
        732 F. Supp. 33, 34 (M.D. Pa. 1989) ..................................... 9

21

22   *Browne v. McDonnell Douglas Corp.*
        504 F. Supp. 514 (N.D. Cal. 1980) ..................................... 9

23   *Cal. Fed. Bank v. Matreyek*
        8 Cal. App. 4th 125, 10 Cal. Rptr. 2d 58 (Cal. Ct. App. 1992) ..................................... 19

24

25   *Cardenas v. AmeriCredit Fin. Servs., Inc.*
        No. C 09-04978 SBA, 2010 WL 3619851 (N.D. Cal. Sept. 13, 2010) ..................................... 14

26   *Clemens v. DaimlerChrysler Corp.*
        534 F.3d 1017 (9th Cir. 2008) ..................................... 13

27
                                                    -ii-

28   MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
        MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF AUTHORITIES

Page No.

*Connick v. Suzuki Motor Co., Ltd.*
174 Ill. 2d 482, 675 N.E.2d 584, 590 (1996) .......................................................... 12

*Cruz v. United States*
219 F. Supp. 1027 (N.D. Cal. 2002) ..................................................................... 20

*DM Research, Inc. v. Coll. of Am. Pathologists*
170 F.3d 53, 56 (1st Cir. 1999) ............................................................................. 9

*Dock ex rel. Young-Dock v. Young*
No. 2:10-CV-00967, 2010 WL 4273229, at *5 (D. Nev. Oct. 22, 2010) ................ 7

*Dreiling v. Am. Express Co.*
458 F.3d 942 (9th Cir. 2006) ................................................................................. 2

*EcoDisc Technology AG v. DVD Format/Logo Licensing Corp.*
711 F. Supp. 2d 1074 (C.D. Cal. 2010) ............................................................... 16

*Fields v. Volkswagen of Am.*
555 P.2d 48, 58 (Okla. 1976) ................................................................................. 6

*Foos v. Raytheon Co.*
No. CV 09-600, 2010 WL 2231817, at *2 (D. Ariz. June 3, 2010) ........................ 7

*Graham v. Taubman*
No. C-74-2518, 1975 WL 448 (N.D. Cal. Mar. 16, 1976) ...................................... 17

*Gutierrez v. Wells Fargo Bank, N.A.*
--- F. Supp. 2d ----, 2010 WL 3155934 (N.D. Cal. 2010) ............................... 14, 16

*Hampton v. Gebhardt's Chili Powder Co.*
294 F.2d 172 (9th Cir. 1961) ................................................................................. 12

*Herrington v. Johnson & Johnson Consumer Companies*
No. C 09-1597, 2010 WL 3448531, at *8 (N.D. Cal. Sept. 1, 2010) ...................... 15

*In re Actimmune Mktg. Litig.*
No. C 08-02376, 2009 WL 3740648, at *13 (N.D. Cal. Nov. 6, 2009) .................... 15

*In re Tobacco II Cases*
46 Cal. 4th 298, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009) ............................. 14, 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prod. Liab. Litig.*
--- F. Supp. 2d ----, 2010 WL 4867562, at *35 (C.D. Cal. Nov. 30, 2010) ............ 18

*In re Zyprexa Prod. Liab. Litig.*
549 F. Supp. 2d 496 (E.D.N.Y. 2008) ..................................................................... 3

*Int'l Nocent Tech. v. Koninklijke Philips Elecs. N.V.*
No. CV 07-00043, 2007 WL 4976364, at *10 n.71 (C.D. Cal. Oct. 29, 2007) .......... 9

-iii-

# TABLE OF AUTHORITIES

Page No.

*Jogani v. Superior Court*
165 Cal. App. 4th 901, 81 Cal. Rptr. 3d 503 (Cal. Ct. App. 2008) ........................................ 19

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*
578 F. Supp. 2d 1229 (C.D. Cal. 2008) ................................................................................. 10

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*
178 Cal. App. 4th 830, 100 Cal. Rptr. 3d 537 (Cal. Ct. App. 2009) ..................................... 17

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009) .............................................................................................. 16

*Kent v. Hewlett-Packard Co.*
No. 09-5341 JF (PVT), 2010 WL 2681767 (N.D. Cal. July 6, 2010) ......................... 12, 13, 14

*Klaxon Co. v. Stentor Elec. Mfg. Co.*
313 U.S. 487 (1941)................................................................................................................. 9

*Landry v. Adam*
282 So. 2d 590 (La. Ct. App. 1973)...................................................................................... 1, 6

*Lawrence v. Lenders for Cmty. Dev.*
No. C 10-00619 CRB, 2010 WL 4922662, at *5 (N.D. Cal. Nov. 29, 2010)........................... 7

*Lee v. City of Los Angeles*
250 F.3d 668 (9th Cir. 2001) .................................................................................................. 3

*Long v. Hewlett-Packard Co.*
No. C 06-02816 JW, 2006 WL 4877691 (N.D. Cal. Dec. 21, 2006)................................... 9, 10

*Loreto v. Procter & Gamble Co.*
--- F. Supp. 2d ----, 2010 WL 3471752, at *10 (S.D. Ohio Sept. 3, 2010)............................. 5

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)............................................................................................................. 4, 9

*McLoughlin v. People's United Bank, Inc.*
586 F. Supp. 2d 70 (D. Conn. 2008)....................................................................................... 3

*Melchior v. New Line Prods., Inc.*
106 Cal. App. 4th 779, 131 Cal. Rptr. 2d 347, (Cal. Ct. App. 2003) ..................................... 19

*Moncada v. Allstate Ins. Co.*
471 F. Supp. 2d 987 (N.D. Cal. 2006) .................................................................................. 12

*Moss v. U.S. Secret Service*
572 F.3d 962 (9th Cir. 2009) ................................................................................................. 7

*Nat'l Union Fire Ins. Co. of Pittsburg v. Resources Dev. Servs., Inc.*
No. 5:10-cv-01324, 2010 WL 4774929, at &*5 (N.D. Cal. Nov. 16, 2010)............................. 7

-iv-

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**TABLE OF AUTHORITIES**

Page No.

*Nelson v. Mead Johnson Nutrition Co.*
   09-CV-61625, slip op. at 13-14 (S.D. Fla. Mar. 8, 2010) ........................................ 19

*Nelson v. Tiffany Indus., Inc.*
   778 F.2d 533 (9th Cir. 1985) ......................................................................... 9, 10

*Neu v. Terminix Int'l, Inc.*
   No. CV 07-6472 CW, 2008 WL 2951390 (N.D. Cal. July 24, 2008) ..................... 16

*Neubronner v. Milken*
   6 F.3d 666 (9th Cir. 1993) .................................................................................. 18

*Noble Asset Mgmt. v. Allos Therapeutics, Inc.*
   No. 04-CV-1030 (RPM), 2005 WL 4161977 (D. Colo. Oct. 20, 2005) ..................... 3

*Oestreicher v. Alienware Corp.*
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................ 17, 18

*Parkinson v. Hyundai Motor of Am.*
   258 F.R.D. 580 (C.D. Cal. 2008) ......................................................................... 10

*Payton v. County of Kane,*
   308 F. 3d 673 (7th Cir. 2002) ......................................................................... 4, 6

*Perfect 10, Inc. v. CCBill, LLC*
   340 F. Supp. 2d 1077 (C.D. Cal. 2004) ............................................................... 14

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*
   No. C 04-0371 JW, 2004 WL 1773349 (N.D. Cal. Aug. 5, 2004) ......................... 14

*Pfizer Inc. v. Superior Court*
   182 Cal. App. 4th 622, 105 Cal. Rptr. 3d 795, 804 (2010) .................................... 15

*Powers v. Optical Radiation Corp.*
   44 Cal. Rptr. 2d 485 (Cal. Ct. App. 1995) ........................................................... 17

*Ramona Manor Convalescent Hosp. v. Care Ents.*
   177 Cal. App. 3d 1120, 225 Cal. Rptr. 120 (Cal. Ct. App. 1986) ..................... 19, 20

*Rose v. Figgie Int'l, Inc..*
   229 Ga. App. 848, 495 S.E.2d 77 (1997) ............................................................... 6

*Sanders v. Apple Inc.*
   672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................. 10

*Sevidal v. Target Corp.*
   --- Cal. Rptr. 3d ----, 2010 WL 4260891 (Cal. Ct. App. 2010) ..................... 14, 16

*Silvera v. Broadway Dep't Store*
   35 F. Supp. 625 (S.D. Cal. 1940) ......................................................................... 12

-v-

**TABLE OF AUTHORITIES**

Page No.

*Stearns v. Select Comfort Retail Corp.*
  No. 08-2746 JF, 2009 WL 1635931, at *4 (N.D. Cal. June 5 2009) ............... 10, 11, 12, 13, 20

*Sun Microsystems, Inc. v. Microsoft Corp.*
  87 F. Supp. 2d 992, 1004-05 (N.D. Cal. 2000) ......................................................................... 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
  551 U.S. 308 (2007) .............................................................................................................. 3

*Tietsworth v. Sears*
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...................................................................... 10, 17, 19

*Tietsworth v. Sears, Roebuck & Co.*
  No. 5:09-CV-00288, 2009 WL 3320486, at *8 (N.D. Cal. Oct. 13, 2009) ............ 15, 17, 18, 20

*Tylka v. Gerber Prods. Co.*
  No. 96 C 1647, 1999 WL 495126, at *8 (N.D. Ill. July 1, 1999) ............................................ 11

*Vockie v. Gen. Motors Corp., Chevrolet Div.*
  66 F.R.D. 57, 61-62  (E.D. Pa. 1975) .................................................................................... 6

*Vogel v. Thrifty Drug Co.*
  43 Cal. 2d 184, 272 P.2d 1, 3-4 (1954) ................................................................................. 12

*W.A. ex rel. S.A. v. Patterson Joint Unified Sch. Dist.*
  No. CV F 10-1317, 2010 WL 4746175, at *8 (E.D. Cal. Nov. 16, 2010) ................................ 6

*Warth v. Seldin*
  422 U.S. 490 (1975) .......................................................................................................... 1, 4

*Wash. Mut. Bank, FA v. Superior Court*
  24 Cal. 4th 906, 103 Cal. Rptr. 2d 320, 15 P.3d 1071, 1080-81 (2001) .................................. 10

*Yumul v. Smart Balance, Inc.*
  --- F. Supp. 2d ----, 2010 WL 3359663 (C.D. Cal. 2010) ........................................... 15, 16, 19

*Zinser v. Accufix Research Inst., Inc.*
  253 F.3d 1180 (9th Cir. 2001) ............................................................................................. 10

**Statutes**

California Business and Professions Code
  Section 17200 ................................................................................................................... 16

California Business and Professions Code
  Section 17204 ................................................................................................................... 16

California Business and Professions Code
  Section 17535 .............................................................................................................. 14, 15

California Buisness and Professions Code
  Section 17500 .............................................................................................................. 14, 15

-vi-

# TABLE OF AUTHORITIES

Page No.

California Commercial Code
 Section  2-607(3)(A) ........................................................................................... 10, 12

California Commercial Code
 Section 2314 ............................................................................................................. 12

California Commercial Code
 Section 2315 ............................................................................................................. 13

## Rules

Federal Rules of Civil Procedure
 Rule 12(b)(6) ............................................................................................................ 1, 3

Federal Rules of Civil Procedure
 Rule 8 ........................................................................................................................... 9

Federal Rules of Civil Procedure
 Rule 9 ....................................................................................... 15, 16, 18, 19

## Other Authorities

5B Charles A. Wright & Arthur R. Miller
 Fed. Prac. & Proc. (3d ed.) § 1357 ........................................................................... 3

R.D. Hursh
 Annotation, What Law Governs Liability of Manufacturer or Seller for Injury Caused by
 Product Sold, 76 A.L.R. 2d 130
 Section 2 (1961) ...................................................................................................... 10

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1   Defendant Abbott Laboratories Inc. ("Abbott") respectfully submits this memorandum of

2   law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss in its entirety the First

3   Amended Complaint ("Am. Compl.") by Plaintiff Jessica L. Tosh-Surryhne ("Tosh-Surryhne").

4   **PRELIMINARY STATEMENT**

5   This putative class action concerns Abbott's September 2010 recall of certain Similac-

6   brand infant formula products. Abbott discovered the presence of a common warehouse beetle

7   in a production area at one of its manufacturing facilities, creating a "remote possibility" that

8   beetles might have gained access to *some* units of product manufactured there. Abbott

9   proactively and voluntarily recalled the lots under suspicion. The United States Food and Drug

10  Administration ("FDA") determined that any product that contained beetles posed "no

11  immediate health risk" and no long-term health concern.

12  Tosh-Surryhne seeks to represent a class of plaintiffs who allegedly suffered economic

13  injury as a result of their purchase of Similac; she expressly states that "damages for personal

14  injuries . . . are not within the scope of this case." However, to establish Article III standing,

15  named plaintiffs in a putative class action "must allege and show that *they personally* have been

16  injured, not that injury has been suffered by other, unidentified members of the class to which

17  they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975)

18  (emphasis added). Tosh-Surryhne's allegation that she purchased recalled Similac does not

19  create standing, because a prophylactic recall "at most indicates that *some* [units of product

20  were] defective," *Landry v. Adam*, 282 So. 2d 590, 596 (La. Ct. App. 1973) (emphasis added),

21  and therefore, *even if true*, "provides no evidence" of "a defect in [her] particular [product],"

22  *Aleksandrov v. Chevrolet Motor Division*, 116 F.3d 482, 1997 WL 303257, at *2 (9th Cir. 1997)

23  (unpublished table decision). In short, Tosh-Surryhne pleads no concrete factual information

24  plausibly showing that *she* suffered any pocketbook injury as a result of her purchases.

25  Aside from Tosh-Surryhne's failure to plead an injury and her resultant lack of standing,

26  each of the Amended Complaint's individual causes of action fails to state a claim for other

27  reasons, and must therefore be dismissed.

28

-1-

**BACKGROUND**

Abbott, a Delaware corporation with its principal place of business in Illinois, manufactures, markets, distributes, and sells Similac-brand infant formula products. (Am. Compl. ¶ 4).[1] Millions of consumers purchase a Similac product each year. (Am. Compl. ¶ 14).

In unspecified "various forms of media," and at unspecified places and times, Abbott has marketed Similac products using the following words and phrases:

- "Closer Than Ever to Breast Milk"
- "We hold to a higher standard when it comes to infant nutrition."
- "Similac formulas have been developed with leading scientists and more than 280 clinical studies."
- "More moms choose Similac. Why? Similac® Advance® has EarlyShield®, and is designed to be more like breast milk and help support your baby's developing immune system. Only EarlyShield has our patented blend of immune-supporting nucleotides – plus prebiotics and carotenoids, nutrients naturally found in breast milk."
- "Complete Nutrition For Your Baby's First Year"
- "Immune Support"
- "Brain & Eye"
- "#1 BRAND IN HOSPITALS"
- "Uniquely designed to match the benefits of breast milk"
- "Calcium for Strong Bones"
- "Nucleotides, Prebiotics and Carotenoids for immune support."

(Am. Compl. ¶ 10). Tosh-Surryhne does not claim to have seen *any* of these particular statements, let alone *all* of them.

In September 2010, during an internal quality review at a single manufacturing plant in Sturgis, Michigan, Abbott discovered the possible presence of "a common warehouse beetle" in

---

[1]  The caption of the Amended Complaint identifies only one defendant – "Abbot Laboratories Inc., d/b/a Abbott Sales, *Marketing* & Distribution Co., a Delaware corporation" (emphasis added). However, Paragraph 4 apparently refers to two "Defendants": "Abbot [sic] Laboratories, Inc.," which Tosh-Surryhne alleges is "an Illinois corporation," and "Abbot [sic] Laboratories Inc. d/b/a Abbot [sic] Sales, *Manufacturing* [sic] & Distribution Co." (emphasis added), which she alleges is "a Delaware corporation." In reality, both of these "Defendants" refer to the same entity – "Abbott Laboratories Inc.," which does business as "Abbott Sales, Marketing & Distribution Co.," and which is a Delaware corporation with its principal place of business in Illinois. *See* Abbott Laboratories Annual Report (Form 10-K), Ex. 21 (Feb. 19, 2010), *at* http://www.sec.gov/Archives/edgar/data/1800/000104746910001018/a2196380zex-21.htm (last visited Dec. 16, 2010); *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (court may take judicial notice of SEC filings).

-2-

1  containers of certain finished Similac products. (Ex. A (September 23, 2010 FDA Press Release)

2  at 1; Ex. B (September 27, 2010 FDA Press Release) at 1).[2] Abbott "immediately ceased

3  production [at the Sturgis plant] when this problem was discovered and put all product

4  manufactured [there] on hold." (Ex. B at 2).

5      FDA determined that formula containing beetles "pose[d] no immediate health risk," (Ex.

6  D (October 26 FDA Press Release II) at 1), other than a "risk of gastrointestinal discomfort and

7  refusal to eat . . . ." (Am. Compl. ¶ 11; Ex. D at 1). FDA advised parents to consult a physician

8  only "[i]f symptoms persist[ed] for more than a few days," and "reassure[d] [the public] . . . that

9  drinking the formula [would] not cause long-term health problems." (Ex. A at 1; Ex. B at 1).

10     After conducting a "facility inspection, root cause investigation, and finished and in-

11  process infant formula powder test" (Ex. D at 1), Abbott on September 22, 2010 announced a

12  voluntary recall of "[c]ertain Similac brand, powdered infant formulas." (Am. Compl. ¶ 11; Ex.

13  C (October 26, 2010 FDA Press Release I) at 1; Ex. E (Abbott September 22, 2010 Recall Notice

14  at 1).[3] The recall was limited to units of product bearing lot numbers indicating that they were

15  manufactured at the affected production area of the Sturgis plant. (Ex. B at 1; Ex. C at 2; Ex. E

16  at 1). Importantly, because warehouse beetles had not uniformly gained access to *every single*

17  unit of product at the affected production area, any given container of recalled Similac had only a

18  "remote possibility" of *actually containing* warehouse beetles. (Ex. E at 1; Ex. A at 1).

19  _____

20  [2] Included as Exhibits A through D to the Request for Judicial Notice filed concurrently herewith are four official
    FDA press releases. In deciding a motion to dismiss, a court "is not limited to the four corners of the complaint,"

21  and may consider "items subject to judicial notice" and "matters of public record" without converting the motion
    into one for summary judgment. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (3d ed.)

22  § 1357; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) (in deciding a 12(b)(6)
    motion, courts may consider "matters of which a Court may take judicial notice"). It is clear that a court "may take

23  judicial notice of the press releases of government agencies." *McLoughlin v. People's United Bank, Inc.*, 586 F.
    Supp. 2d 70, 73 (D. Conn. 2008); *see also In re Zyprexa Prods. Liab. Litig.*, 549 F. Supp. 2d 496, 501 (E.D.N.Y.

24  2008) (taking notice of publicly released FDA documents in deciding 12(b)(6) motion); *Noble Asset Mgmt. v. Allos
    Therapeutics, Inc.*, No. 04-CV-1030 (RPM), 2005 WL 4161977, at *2 (D. Colo. Oct. 20, 2005) (same).

25  [3] Included as Exhibit E to the Request for Judicial Noticed filed herewith is Abbott's September 22, 2010 Recall
    Notice. The Recall Notice (and therefore, the extent of the recall) is a "matter[] of public record" which the Court

26  may take into consideration. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); 5B Charles Alan
    Wright & Arthur R. Miller, Federal Practice & Procedure (3d ed.) § 1357. Moreover, the Court may also consider

27  the Recall Notice on the grounds that the Amended Complaint "necessarily relies" on the recall, as effectuated by
    the Recall Notice, and because the Recall Notice's "authenticity . . . is not [subject to] contest[]." *Lee*, 250 F.3d at

28  688-89.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1  Abbott set up a 24-hour toll-free hotline to assist customers in returning the recalled

2  products and offered a "full refund" to anyone who did so.  (Ex. A at 1; Ex. B at 1; Ex. E at 1).

3  Tosh-Surryhne does not state whether she participated in this offer.  On October 26, 2010, FDA

4  announced that Abbott "ha[d] worked with state and FDA officials to satisfactorily implement

5  plans at the [affected] manufacturing facility to correct the situation, and prevent its recurrence."

6  (Ex. C at 1).

7  At some unspecified point "[i]n 2010," Tosh-Surryhne purchased one or more Similac

8  products "in reliance on" unspecified "untrue and misleading" Abbott statements.  (Am. Compl.

9  ¶¶ 5, 44).  She "began feeding this formula to her infant son on or about July 30, 2010 and

10  continued to do so until . . . late September 2010" after she learned of the recall.  (Am. Compl. ¶

11  5).  Two of the containers she purchased had lot numbers which she alleges were part of the

12  recall.  (Am. Compl. ¶ 5).  She alleges that her son "developed gastrointestinal distress" that was

13  "attributable to" his consumption of defective Similac (Am. Compl. ¶ 11), but does not elaborate

14  as to the nature of her child's symptoms or why she believes that they were caused by Similac.

15  **ARGUMENT**

16  **I.  Because Tosh-Surryhne's Allegations Do Not Plausibly Establish A Particularized
17  Injury, She Lacks Standing To Bring Any Of Her Claims**

18  The "irreducible constitutional minimum of standing" requires an injury that is "concrete

19  and particularized," affecting the plaintiff "in a personal and individual way." *Lujan v.*

20  *Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992).  Although Tosh-Surryhne sues on behalf

21  of a putative class, a would-be "representative" plaintiff cannot "piggy-back on the injuries of

22  . . . unnamed class members" to meet this requirement.  *Payton v. County of Kane*, 308 F. 3d

23  673, 682 (7th Cir. 2002).  In other words, "named plaintiffs . . . must allege and show that they

24  personally have been injured," and cannot avoid dismissal by alleging that "other, unidentified

25  members" of the putative class suffered injury.  *Warth*, 422 U.S. at 502; *see also Payton*, 308

26  F.3d at 682 ("[S]tanding cannot be acquired through the back door of a class action.").

27  Consequently, a named plaintiff in a class action must "allege facts pertinent to [her] own

28

-4-

1   personal experience with the product." *Loreto v. Procter & Gamble Co.*, --- F. Supp. 2d ----,

2   2010 WL 3471752, at *10 (S.D. Ohio Sept. 3, 2010).

3       This requirement is even more important in the wake of *Ashcroft v. Iqbal*, 129 S. Ct. 1937

4   (2009), which held that "a complaint must contain sufficient factual matter, accepted as true, to

5   'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Bell Atl. Corp. v.*

6   *Twombly*, 550 U.S. 544, 570 (2007)).  Complaints containing "mere conclusory statements" or

7   "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.  *Id.* (quoting

8   *Twombly*, 550 U.S. at 557).  While a complaint "does not require 'detailed factual allegations,'"

9   it requires enough specific "factual content [to] allow[] a reasonable inference that the defendant

10  is liable" for an injury to the plaintiff.  *Id.*  A reasonable inference of liability requires more than

11  a "sheer possibility" that the plaintiff will be entitled to relief.  *Iqbal*, 129 S. Ct. at 1949; *see also*

12  *Twombly*, 550 U.S. at 555 ("Factual allegations [in a complaint] must be enough to raise a right

13  to relief above the speculative level . . . .").

14      Even taking as true all the allegations in the Amended Complaint, Tosh-Surryhne has not

15  "raise[d] a right to relief above the speculative level."  As an initial matter, the fact that she

16  allegedly purchased units of product that were subject to a recall does not, by itself, allow the

17  Amended Complaint to withstand dismissal.  Tosh-Surryhne repeatedly (and disingenuously)

18  refers to the supposedly "adulterated" nature of "Similac products" as a monolithic whole, even

19  though "a manufacturer recall does not admit a defect in a particular product, but refers to the

20  *possibility* of a defect in a class of products."  *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d

21  1036, 1045 (N.D. Ga. 2004) (emphasis added); *see also Aleksandrov*, 116 F.3d at 482, 1997 WL

22  303257, at *2 (bare fact of recall "create[d] no material issues of fact as to whether there was a

23  defect in [plaintiff's] particular [unit]").  The exhibits to this memorandum confirm what these

24  cases make clear: any individual recalled unit of Similac had at most a "possibility" – even a

25  "remote possibility" – of actually containing beetles.  (Ex. A at 1; Ex. E at 1).  Thus, the fact that

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1    Tosh-Surryhne purchased recalled product – taken as true – creates nothing more than a "sheer

2    possibility" of economic injury. *Iqbal*, 129 S. Ct. at 1949.[4]

3         The Amended Complaint also makes conclusory allegations that Tosh-Surryhne and the

4    class "suffered damages" (Am. Compl. ¶¶ 3, 33, 39, 55, 59), and that her son "was harmed"

5    (Am. Compl. ¶ 11), as the result of Abbott's conduct.  However, "unadorned, the-defendant-

6    unlawfully-harmed-me accusation[s]" such as these are entitled to no weight at all.  *See Iqbal*,

7    129 S. Ct. at 1949.  In fact, all but one of these are not even "unadorned, the-defendant-harmed-

8    *me* accusation[s]" – they are unadorned the-defendant-unlawfully-harmed-*the-class* accusations.

9    Given the courts' concern with attempts to engineer standing "through the back door of a class

10   action," *Payton*, 308 F.3d at 682, *Iqbal*'s insistence on concrete facts has great urgency here.

11        The Amended Complaint's only other allegation concerning Tosh-Surryhne personally is

12   that her son "developed gastrointestinal distress attributable to Abbot's [sic] adulterated

13   Similac . . . ." (Am. Compl. ¶ 5).  As a threshold matter, the bald assertion of causation – i.e.,

14   that her child's symptoms were "attributable to" consuming beetle-affected Similac – may not be

15   accepted on faith, even at the pleadings stage.  *See Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a

16   court must accept as true all allegations contained in a complaint is inapplicable to legal

17   conclusions."); *W.A. ex rel. S.A. v. Patterson Joint Unified Sch. Dist.*, No. CV F 10-1317, 2010

18   WL 4746175, at *8 (E.D. Cal. Nov. 16, 2010) ("A court is free to ignore . . . unsupported

19   conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual

20   allegations." (internal quotation marks omitted)).

21

22

23   _____

     [4] *See Aleksandrov*, 1997 WL 303257, at *2 (where recall notice "state[d] that *some* Metros *may* have a hood latch
24   defect," bare fact of recall "create[d] no material issue of fact as to whether there was a defect in *this particular*
     Metro" (emphases added)); *Bailey*, 350 F. Supp. 2d at 1045 ("Bailey has not presented any evidence that *his* brakes
25   suffer from the overheating defect . . . . Thus, the recall notice is insufficient to create a triable issue regarding the
     existence of a defect." (emphasis added)); *Vockie v. Gen. Motors Corp., Chevrolet Div.*, 66 F.R.D. 57, 61-62 (E.D.
26   Pa. 1975) (stating that a recall "has minimal probative value to the existence of a defect in a particular [unit]");
     *Fields v. Volkswagen of Am.*, 555 P.2d 48, 58 (Okla. 1976) (stating that "[e]vidence of recall, standing alone[,] is not
27   sufficient" to show defect); *Rose v. Figgie Int'l*, Inc., 229 Ga. App. 848, 854-55, 495 S.E.2d 77, 84 (1997) (holding
     that "recall letter alone," without "independent proof that the particular product in question suffered from the same
28   defect," is "insufficient to create a jury issue of the presence of such a defect" (citation omitted)); *Landry*, 282 So.
     2d at 596 (stating that "the fact of a recall program is not relevant" to a manufacturer's liability to any given
     plaintiff, as a prophylactic recall "proves nothing about the condition of [any individual unit of product]").

                                              -6-

"After dispatching the [Amended C]omplaint's conclusory allegations," the question then becomes whether its "non-conclusory 'factual content,' and reasonable inferences from that content, . . . plausibly suggest[] . . . entitle[ment] . . . to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Iqbal*, 129 S. Ct. at 1951. On that score, the Supreme Court has made clear that a complaint does not satisfy the plausibility test if it "pleads facts that are 'merely consistent with' [the] defendant's liability," rather than actually indicative of it. *Iqbal*, 129 S. Ct. at 1949; *see Moss*, 572 F.3d at 971-72 (9th Cir. 2009) ("The facts [alleged] do not rule out the possibility of viewpoint discrimination, and thus at some level they are consistent with a viable First Amendment claim, but mere possibility is not enough. The factual content contained within the complaint does not allow us to reasonably infer [discriminatory motivation], and it therefore fails to satisfy *Twombly* and *Iqbal*."). In other words, even if the facts are "consistent with" the plaintiff's theory, the complaint does not state a plausible claim if there is an "obvious alternative explanation" for those facts. *Iqbal*, 129 S. Ct. at 1949, 1952; *see also Twombly*, 550 U.S. at 557 (upholding dismissal of complaint alleging only facts that, even if true, "could just as well" have an innocent explanation).[5]

And the concrete facts pleaded in the Amended Complaint, while perhaps "consistent" with the theory that Tosh-Surryhne's child consumed beetles in a Similac product, are not remotely *probative* of it, and are more susceptible of an "alternative explanation." Those facts, again, are (1) that Tosh-Surryhne purchased recalled Similac twice, and (2) that Tosh-Surryhne's child "developed gastrointestinal distress" at an unspecified point, and for an unspecified

---

[5] District courts in this circuit have not hesitated to apply this teaching from *Twombly* and *Iqbal* in a variety of contexts. *See, e.g., Lawrence v. Lenders for Cmty. Dev.*, No. C 10-00619 CRB, 2010 WL 4922662, at *5 (N.D. Cal. Nov. 29, 2010) (stating that "[a] complaint is not plausible if the conduct at issue is more likely explained by lawful behavior" and dismissing race-discrimination claim when "there [was] a far more likely [innocent] explanation" (internal quotation marks omitted)); *Nat'l Union Fire Ins. Co. of Pittsburg v. Resources Dev. Servs., Inc.*, No. 5:10-cv-01324, 2010 WL 4774929, at &*5 (N.D. Cal. Nov. 16, 2010) ("While the complaint alleges that trucking companies participated in the scheme, . . . the facts that are alleged are equally consistent with an inference that [they did not] . . . ."); *Dock ex rel. Young-Dock v. Young*, No. 2:10-CV-00967, 2010 WL 4273229, at *5 (D. Nev. Oct. 22, 2010) ("[W]hile the conduct of Ford is consistent with an unlawful agreement [to violate Plaintiff's civil rights], the conduct does not plausibly suggest such an agreement because the same set of facts is more likely explained as Ford's reasonable reaction to Jasminh's disclosure that Plaintiff touched her in an inappropriate manner."); *Foos v. Raytheon Co.*, No. CV 09-600, 2010 WL 2231817, at *2 (D. Ariz. June 3, 2010) ("In [its] assessment, the court considers whether the facts[, taken as true,] more likely suggest the alleged illicit conduct or are more likely explained by legitimate reasons.").

-7-

1   duration, between July and September 2010.  The plausibility assessment "requires the reviewing

2   court to draw on its judicial experience and common sense," *Iqbal*, 129 S. Ct. at 1949-50, and

3   "common sense" indicates that a sizeable percentage of infants experience "gastrointestinal

4   distress" for any number of non-entomological reasons (including sensitivity to *untainted* infant

5   formula).  Meanwhile, the case law and the exhibits establish that each individual unit of recalled

6   Similac had only a "possibility" (or even a "remote possibility") of containing beetles, and Tosh-

7   Surryhne acknowledges that *actually consuming* formula containing beetles merely entailed "a[]

8   risk of gastrointestinal discomfort," rather than a certainty of it.  (Am. Compl. ¶ 11).

9        It follows that in the vast majority of children who, like Tosh-Surryhne's child, consumed

10  recalled Similac and also suffered "gastrointestinal distress" at some point between July and

11  September 2010 (Am. Compl. ¶ 5), these events had no causal nexus.  In other words, even if all

12  the facts in the Complaint are true, it is *more likely* that Tosh-Surryhne's child's gastrointestinal

13  discomfort was caused by something other than warehouse beetles found in Similac.  Therefore,

14  any inference that Tosh-Surryhne actually purchased *defective* product (as opposed to merely

15  *recalled* product) would be pure speculation – at least absent significant "further factual

16  enhancement." *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 557 ("[A]llegations of

17  parallel [events] . . . must be placed in a context that raises a suggestion of [a causal nexus], not

18  merely parallel [events] that could just as well be independent [of one another].").

19       No such "further factual enhancement" or "place[ment] in context" can be found in the

20  Amended Complaint.  Tosh-Surryhne might have pleaded, for example, that her child

21  consistently developed "gastrointestinal distress" soon after consuming recalled Similac, and did

22  not experience it at other times; that her child had not experienced "gastrointestinal distress"

23  before first consuming recalled Similac, and/or stopped experiencing it once he stopped

24  consuming recalled Similac; that her child had no other medical conditions likely to cause

25  "gastrointestinal distress"; that her child received a diagnosis from a medical professional

26  suggesting that he had consumed beetles; that she visually observed beetles or beetle parts in the

27  formula canisters from which her child had been fed, or detected beetles or beetle parts in his

28  stool; or that scientific testing had confirmed the presence of beetles or beetle parts in those

-8-

1  formula canisters or in her child's stool.  Some these factual allegations might have "nudged

2  [Tosh-Surryhne's] claim" of economic injury "across the line from conceivable to plausible."

3  *Iqbal*, 129 S. Ct. at 1951.  But she does not make any of them.[6]

4          In short, the Amended Complaint, taken as true, establishes only that (1) Tosh-Surryhne

5  purchased two units of Similac that had a "possibility" of containing a defect, which itself had

6  only a "risk" of causing physical symptoms, and (2) that her child experienced symptoms

7  "consistent with" Abbott's liability, but "[also] compatible with, [and] indeed . . . more likely

8  explained by," innocent causes.  *Iqbal*, 129 U.S. at 1950.  This does not satisfy the "irreducible

9  constitutional minimum" of an injury in fact, and the Amended Complaint must therefore be

10 dismissed for lack of standing.  *Lujan*, 504 U.S. at 560.  For the same reason, the causation

11 and/or injury element of each of Tosh-Surryhne's substantive causes of action is absent.[7]

12 **II.    Tosh-Surryhne Does Not State A Claim For Breach Of Express Warranty**

13         An express warranty "is a contractual term concerning some aspect of the sale, such as

14 the quality of the warranted item."  *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2006 WL

15 4877691, at *4 (N.D. Cal. Dec. 21, 2006).[8]  To plead a cause of action for breach of express

---

16 [6] It is not asking too much to require some of this information to be pleaded up front, before "unlock[ing] the doors
17 of discovery." *Iqbal*, 129 S. Ct. at 1950.  As another judge in this district has observed, "The [Supreme] Court has
   made the decision, as a matter of policy, that it is better to require a factual basis before allowing costly litigation to
18 proceed than it is to permit plaintiffs to commence discovery without stating facts supporting their claims." *Int'l
   Nocent Tech. v. Koninklijke Philips Elecs. N.V.*, No. CV 07-00043, 2007 WL 4976364, at *10 n.71 (C.D. Cal. Oct.
19 29, 2007) (Morrow, J.) (citing *Twombly*); *see also DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56
   (1st Cir. 1999) (stating that the Rule 8 pleading standard requires plaintiffs to  "do [some amount of] detective work
20 in advance" of filing suit in order "to protect society from the costs of highly unpromising litigation").

21 [7] To the extent Tosh-Surryhne's asserted "injury" is her mere fear or indignation that the product she fed her child
   *might* have contained beetles, this is not a cognizable injury.  *See Brinkman v. Shiley, Inc.*, 732 F. Supp. 33, 34
22 (M.D. Pa. 1989) (dismissing emotional-distress claim based on satisfactorily functioning product's *potential* to
   malfunction); *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1299, 44 Cal. Rptr. 2d 526, 526
23 (1995) (holding that California law does not "contemplate indemnity for a potential injury that never, in fact,
   materialized" and that "the test of merchantability" is not whether a product is "free of all speculative risks").

24 [8] In diversity cases, "the federal courts must follow the conflict of laws rules prevailing in the states in which they
25 sit." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941).  Under California's "governmental interest
   analysis" approach, a California court will apply California substantive law "unless it is shown that there is a
26 compelling reason to displace forum law." *Browne v. McDonnell Douglas Corp.*, 504 F. Supp. 514, 517 (N.D. Cal.
   1980); see also *Nelson v. Tiffany Indus., Inc.*, 778 F.2d 533, 534-35 (9th Cir. 1985).  Only if another state's law "[is]
27 materially different" from California's and "the [other] state['s] . . . interests would be more impaired if its law were
   not applied" will a California court decline to apply California law.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d
28 1180, 1187 (9th Cir. 2001).  Here, California "has a strong interest in protecting its citizens [such as Tosh-Surryhne]
   from [allegedly] defective products distributed in that state," *Nelson*, 778 F.2d at 534-35, and from "wrongful

-9-

1   warranty, a plaintiff must allege: (1) "the exact terms of the warranty," (2) "reasonable reliance,"

2   and (3) "a breach of warranty which proximately causes the plaintiff's injury." *Id.*  "A buyer

3   also must plead that notice of the alleged breach was provided to the seller within a reasonable

4   time after discovering the breach." *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009

5   WL 1635931, at *4 (N.D. Cal. June 5 2009) (citing Cal. Com. Code § 2-607(3)(A)).  Aside from

6   the Amended Complaint's failure to state any injury (and thus to plead a "breach"), Tosh-

7   Surryhne's express-warranty claim fails for four other reasons.

8           One, many of the Abbott statements Tosh-Surryhne alleges are "'mere puffery' [that]

9   cannot support liability under a claim for breach of warranty." *Sanders v. Apple Inc.*, 672 F.

10  Supp. 2d 978, 987 (N.D. Cal. 2009); *see also Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578

11  F. Supp. 2d 1229, 1238 (C.D. Cal. 2008).  "The distinguishing characteristics of puffery are

12  vague, highly subjective claims as opposed to specific, detailed factual assertions." *Sanders*, 672

13  F. Supp. 2d at 987; *see also Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010)

14  (statements not describing "specific and absolute characteristics of [the] product" are puffery).

15  Abbott's alleged statements that Similac is "Closer Than Ever To Breast Milk," that it provides

16  "complete nutrition for your baby's first year," that "More moms choose Similac [than an

17  unspecified alternative]," and that Abbott holds to a "higher standard . . . [of] infant nutrition"

18  are such subjective statements not capable of absolute truth or falsity.  In a case involving similar

19  allegations with respect to baby-food advertising, the court explained:

20              Nutrition is a nebulous concept . . . . Statements such as "optimum
            nutrition," or "[n]utritionally, you can't buy a better food than
21          Gerber," or the "most wholesome nutritious safe foods you can
            buy anywhere in the world," add little to the daily informational
22          barrage to which consumers are exposed. These statements fall
            within the supermarket sales pitch; they address such a large
23          market that they bespeak caution, and should put the reasonable
24          consumer on alert that the comments are meaningless sales patter.

25  _____

26  conduct allegedly occurring within its borders," *Parkinson v. Hyundai Motor of Am.*, 258 F.R.D. 580, 589 (C.D. Cal.
    2008); *see also* R.D. Hursh, Annotation, What Law Governs Liability of Manufacturer or Seller for Injury Caused
27  by Product Sold, 76 A.L.R. 2d 130 § 2 (1961).  None of the other states with factual ties to this case – Delaware
    (Abbott's state of incorporation), Illinois (Abbott's principal place of business), or Michigan (where the recalled
28  products were manufactured) – has more than a tangential "interest in having its own law applied . . . ." *Wash. Mut.
    Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920, 103 Cal. Rptr. 2d 320, 331, 15 P.3d 1071, 1080-81 (2001).

-10-

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

* * *

> This is particularly true for Gerber's "Mom knows" or "learning to
> eat smart" statements. Advertisements such as "Gerber. For
> learning to eat smart right from the start" are not deceptive. Such
> advertisements are classic marketing tools that operate to enhance
> the image of the manufacturer. Similarly, other general
> observations such as "The people and resources of the Gerber
> Products Company are dedicated to assuring that the company is
> the world leader in, and advocate for, infant nutrition, care and
> development," simply present[] no basis for consumer deception.

*Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *8 (N.D. Ill. July 1, 1999).[9]

Two, of those statements that *are* sufficiently factual to create a warranty, nothing in the

Amended Complaint suggests that they are false. That is, whether Tosh-Surryhne's Similac

contained beetles simply has no bearing on whether "Similac formulas [were] developed with

leading scientists," whether Similac "has EarlyShield®," whether Similac contains calcium and

compounds that support the immune system, whether Similac contains "Nucleotides, Prebiotics,

and Carotenoids," whether Similac supports "Strong Bones" and "Brain & Eye," or whether

Similac is the "#1 BRAND IN HOSPITALS."

Three, the Amended Complaint does not adequately plead reliance. While Tosh-

Surryhne does allege (under the heading of her false-advertising claim, not her warranty claim)

that she purchased Similac "in reliance on Defendants' untrue and misleading statements" (Am.

Compl. ¶¶ 44), she does not specify *which* statements she relied on. Her blanket allegation of

reliance on unspecified "statements" does not suffice. *See Stearns*, 2009 WL 1635931, at *4

(plaintiff alleging breach of express warranty must "describe the *exact terms* of the warranty,

[and] allege that [she] reasonably relied *on those terms* . . . ." (emphases added)). In fact, Tosh-

Surryhne does not allege that she ever *saw or heard* the particular statements in the Amended

Complaint prior to purchasing Similac, thus precluding any inference of reliance. *See Moncada*

---

[9] The *Tylka* Court also found it significant that the statements at issue "refer[red] to Gerber's baby products as a whole," rather than any "individual product." 1999 WL 495126, at *8 (stating that "[l]iability cannot follow for such vague, all encompassing[] communications"). The same is true here; "Similac" is not one product, but rather, a brand name encompassing numerous individual products (Ex. B at 1), and the statements in the Amended Complaint – except for one, which is not alleged to be false – do not refer to any specific Similac product.

-11-

1    *v. Allstate Ins. Co.*, 471 F. Supp. 2d 987, 997 (N.D. Cal. 2006) (dismissing express-warranty

2    claim where plaintiffs did not "actually read [and thus did not] rely on the representations").

3         Four, Tosh-Surryhne fails to plead she provided Abbott with the requisite notice that she

4    was dissatisfied with her purchase.  Under California law, "[t]he buyer must, within a reasonable

5    time . . . notify the seller of breach [of warranty] or be barred from any remedy . . . ."  Cal. Com.

6    Code § 2607(3)(A).  Since notice is a condition precedent to recovery, it must be pleaded in the

7    complaint.  *See Stearns*, 2009 WL 1635931, at *4; *Vogel v. Thrifty Drug Co.*, 43 Cal. 2d 184,

8    188, 272 P.2d 1, 3-4 (1954).  "The fact that the giving of notice must be pleaded obviously

9    requires that it be given before filing suit," *Arata v. Tonegato*, 152 Cal. App. 2d 837, 841, 314

10   P.2d 130, 133 (1957), or at the very least, "before the filing of the pleading in which it is alleged

11   and independent of that pleading," *Hampton v. Gebhardt's Chili Powder Co.*, 294 F.2d 172, 174

12   (9th Cir. 1961).  That Abbott may have known of the possibility of "problems with [the] product

13   line" is not enough.  *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 493-94, 675 N.E.2d 584,

14   590 (1996); *see Silvera v. Broadway Dep't Store*, 35 F. Supp. 625, 626 (S.D. Cal. 1940) (notice

15   must inform seller "that *the buyer* is asserting a violation of *his* legal rights" (emphasis added)).[10]

16   **III.    Tosh-Surryhne Does Not State A Claim For Breach Of Implied Warranty**

17          **A.    Implied Warranty of Merchantability**

18          Every contract for the sale of goods contains an implied warranty "that the goods shall be

19   merchantable . . . ."  Cal. Com. Code § 2314(1).  To be "merchantable," goods must be "fit for

20   the ordinary purposes for which such goods are used."  *Id.* § 2314(2)(c); *see also Kent v.*

21   *Hewlett-Packard Co.*, No. 09-5341 JF (PVT), 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010).

22   The implied warranty of merchantability "does not 'impose a general requirement that goods

23   precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of

24   quality.'"  *Kent*, 2010 WL 2681767, at *4 (quoting *Am. Suzuki Motor Corp. v. Superior Court*,

---

[10] Abbott acknowledges that a judicially-created exception to the notice requirement exists "where the buyer[] did not purchase the product from the manufacturer directly."  *Stearns*, 2009 WL 1635931, at *4 n.3.  However, the Amended Complaint is silent as to whether Tosh-Surryhne purchased Similac from a retailer or directly from Abbott.  (*See* Ex. B at 2 (discussing Abbott's online direct-to-customer sales of Similac).)  Because notice must normally be pleaded in order to state a claim, and because Tosh-Surryhne has not pleaded any facts that would remove her from the operation of the otherwise-applicable rule, the Court must apply that rule.

-12-

1  37 Cal. App. 4th 1291, 1296, 44 Cal. Rptr. 2d 526, 529 (Cal. Ct. App. 1995)).[11]  Tosh-Surryhne

2  fails to state a claim for breach of the implied warranty of merchantability for two reasons.

3      First, as discussed above, the Amended Complaint contains no concrete facts plausibly

4  showing that the unit of product Tosh-Surryhne purchased did not meet a "minimum level of

5  quality" or that it was not "fit for the ordinary purpose[] for which [it is] used."  No claim for

6  breach of the implied warranty of merchantability will lie unless a defect has actually manifested

7  in the *unit of product* purchased by the plaintiff; the fact that a given *product line* contains some

8  faulty units is not enough.  *See Am. Suzuki*, 37 Cal. App. 4th at 1298-99, 44 Cal. Rptr. 2d at 531.

9      Second, as discussed in relation to breach of express warranty, the Amended Complaint

10  fails to plead the required element of notice of breach.  *See Am. Home Assur. Co. v. Donaldson

11  Co.*, No. EDCV 08-762-VAP, 2008 WL 4793672, at *2 (C.D. Cal. 2008) ("Plaintiff's failure to

12  plead 'notice' dooms its implied warranties claim.").

13      **B.   Implied Warranty of Fitness For A Particular Purpose**

14      Beyond the general warranty of merchantability, California law also sometimes

15  recognizes an implied warranty of fitness for a particular purpose.  *See* Cal. Com. Code § 2315.

16  This specialized warranty exists "only where," *inter alia*, the purchaser "intend[ed] to use the

17  goods for a particular purpose" of which "the manufacturer or seller . . . ha[d] reason to know" at

18  the time of sale.  *Kent*, 2010 WL 2681767, at *5.  It "envisages a specific use by the buyer which

19  is peculiar to the nature of his business," in contrast to the concept of merchantability, which

20  "go[es] to uses which are customarily made of the goods in question."  *Id.*

21      The Amended Complaint does not allege that Tosh-Surryhne intended to make some

22  unusual, specialized use of the Similac she purchased, or that Abbott had reason to know of any

23  such intent.  Accordingly, to the extent Tosh-Surryhne alleges a breach of this warranty, her

24  claim must also be dismissed for this reason.  *See id.* (dismissing claim where "[p]laintiffs ha[d]

25  not alleged that they used the [products] in suit for anything other than their ordinary purpose").

26  _____

27  [11] Normally, an implied warranty claim under California law also requires "vertical contractual privity" – i.e., that the plaintiff purchased the product directly from the defendant. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  While privity is absent here, Abbott does not contest that this case falls under California's exception to the privity requirement for cases involving "foodstuffs" and/or "pharmaceuticals."  *Id.*

28  -13-

1   **IV.   Tosh-Surryhne Does Not State A Claim For "False And Misleading Advertising"**

2           The Amended Complaint's fourth claim is labeled "False And Misleading Advertising."

3   Abbott presumes that it intends to assert a claim under Cal. Bus. & Prof. Code § 17500, the

4   California False Advertising Law ("FAL").[12]

5           To state a claim under the FAL, a plaintiff must demonstrate that the defendant "ma[d]e

6   or disseminate[d] [a] statement . . . which [was] known, or which by the exercise of reasonable

7   care should [have been] known, to be untrue or misleading." *Brewer v. Indymac Bank*, 609 F.

8   Supp. 2d 1104, 1124 (E.D. Cal. 2009) (quoting Cal. Bus. & Prof. Code § 17500).   A statement is

9   "untrue or misleading" if a "reasonable consumer" would have been misled or deceived by the

10  statement. *Id.*   Furthermore, since the passage of California's Proposition 64, a plaintiff also

11  must plead and establish that he "(1) suffered an injury in fact and (2) lost money or property as

12  a result of the [false advertising]." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009);

13  *see* Cal. Bus. & Prof. Code § 17535.[13]   Such a showing requires that the plaintiff plead "actual

14  reliance" – i.e., that the defendant's deception "played a substantial part . . . in influencing [the

15  plaintiff's] decision." *Gutierrez v. Wells Fargo Bank, N.A.*, --- F. Supp. 2d ----, 2010 WL

16  3155934, at *54 (N.D. Cal. 2010) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28, 93

17  Cal. Rptr. 3d 559, 581, 207 P.3d 20, 39 (2009)).   The Amended Complaint fails to state a false-

18  advertising claim for four reasons.

19          One, Tosh-Surryhne has not plausibly pleaded that she suffered an "injury in fact" or

20  "lost money or property" because of Abbott's advertising. *Birdsong*, 590 F.3d at 959.   As noted

21  _____

    [12] To the extent Tosh-Surryhne intends to assert a claim under some purported common-law doctrine of false
22  advertising, it is doubtful that this is a cognizable cause of action. *See Bank of the West v. Superior Court*, 2 Cal. 4th
    1254, 1263-64, 10 Cal. Rptr. 2d 538, 544, 833 P.2d 545, 551 (Cal. 1992) (recovery for unfair business practices at
23  common law "require[s] a showing of competitive injury," and common law thus "d[oes] not provide an effective
    remedy for consumers").   In any event, the few authorities that obliquely recognize such a claim have treated it as
24  identical to, and "requir[ing] analysis of the same factors" as, an FAL claim. *Perfect 10, Inc. v. CCBill, LLC*, 340 F.
    Supp. 2d 1077, 1109-10 (C.D. Cal. 2004), *reversed in part on other grounds*, 481 F.3d 751 (9th Cir. 2007); *see also*
25  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. C 04-0371 JW, 2004 WL 1773349, at *8 (N.D. Cal. Aug. 5, 2004).

26  [13] Proposition 64 was adopted in 2004; it amended the FAL as well as California's unfair competition law. *See*
    *Sevidal v. Target Corp.*, --- Cal. Rptr. 3d ----, 2010 WL 4260891, at *2 n.3 (Cal. Ct. App. 2010). The "intent of
27  California voters [in passing Proposition 64] was to limit . . . abuses [of the legal system] by prohibiting private
    attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact."
28  *Cardenas v. AmeriCredit Fin. Servs., Inc.*, No. C 09-04978 SBA, 2010 WL 3619851, at *9 (N.D. Cal. Sept. 13,
    2010) (internal quotation marks and citation omitted).

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1  previously, the facts in the Amended Complaint, taken as true, are no more than "consistent

2  with" the existence of a defect in the particular units of product which *she* purchased. *Iqbal*, 129

3  S. Ct. at 1949; *see also Branick v. Downy Sav. & Loan Ass'n*, 39 Cal. 4th 235, 240, 46 Cal. Rptr.

4  3d 66, 69, 138 P.3d 214, 217 (2006) (noting that in the wake of Proposition 64, "[u]ninjured

5  persons may not sue . . . on behalf of the general public").

6      Two, as already argued, Tosh-Surryhne has not alleged any "untrue or misleading"

7  statements made by Abbott, as all of Abbott's statements are either true or "mere puffery . . .

8  [that] as a matter of law could not deceive a reasonable consumer." *Tietsworth v. Sears,*

9  *Roebuck & Co.*, No. 5:09-CV-00288, 2009 WL 3320486, at *8 (N.D. Cal. Oct. 13, 2009).

10      Three, Tosh-Surryhne fails to plead the "actual reliance" element of an FAL claim.

11  While she generically alleges that she purchased Similac "in reliance on Defendants' untrue and

12  misleading statements" (Am. Compl. ¶ 44), this is not enough; a plaintiff "must plead and prove

13  his 'actual reliance' on *the [specific] alleged misrepresentation* to have standing under

14  Proposition 64." *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 633, 105 Cal. Rptr. 3d

15  795, 804 (2010) (emphasis added); *see Herrington v. Johnson & Johnson Consumer Companies*,

16  No. C 09-1597, 2010 WL 3448531, at *8 (N.D. Cal. Sept. 1, 2010) (rejecting plaintiffs'

17  argument that they "[were] not required to allege which representations they specifically saw").[14]

18      Four, FAL claims sound in fraud, and Tosh-Surryhne does not plead her false-advertising

19  claim with the particularity required by Federal Rule of Civil Procedure 9(b). *See Yumul v.*

20  *Smart Balance, Inc.*, --- F. Supp. 2d ----, 2010 WL 3359663, at *3 (C.D. Cal. 2010) ("Rule 9(b)

21  governs the pleading of [plaintiff's false advertising] claims . . . ."); *EcoDisc Technology AG v.*

22  *DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (same); *Neu v.*

23  *Terminix Int'l, Inc.*, No. C 07-6472 CW, 2008 WL 2951390, at *3 (N.D. Cal. July 24, 2008)

---

[14] In *In re Tobacco II Cases*, the California Supreme Court held that "where . . . *a plaintiff alleges exposure to a long-term advertising campaign*, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." 46 Cal. 4th at 328, 93 Cal. Rptr. 3d at 582, 207 P.3d at 40 (emphasis added). Tosh-Surryhne cannot rely on *Tobacco II* to defeat the specific reliance requirement, because she does not allege exposure to a "decades-long" "saturation advertising" campaign of the type that occurred in the tobacco industry. *Id.* at 327, 93 Cal. Rptr. 3d at 582, 207 P.3d at 40 (citations omitted); *see In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *13 (N.D. Cal. Nov. 6, 2009) ("[O]nly 'where . . . a plaintiff alleges exposure to a long-term advertising campaign,' is a plaintiff freed from pleading 'individualized reliance on specific misrepresentations . . . .'").

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1  (same).  That rule requires the plaintiff to "plead 'the who, what, when, where, and how' of the

2  misconduct charged,' and further [to] 'set forth what is false or misleading about [each alleged]

3  statement, and why it is false.'"  *Yumul*, --- F. Supp. 2d at ----, 2010 WL 3359663, at *3 (internal

4  quotation marks and citations omitted).  However, Tosh-Surryhne "fails to allege . . . the

5  particular circumstances surrounding [the alleged] representations."  *Id.* at *4 (quoting *Kearns v.*

6  *Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)).  She does not "specify what the . . .

7  advertisements or other sales material [alleged to be false] specifically stated."  *Id.*  She does not

8  "specify when [s]he was exposed to them . . . ."  *Id.*  And, as already noted, she "fail[s] to specify

9  which [particular representations] [s]he relied upon in making [her] decision to buy" Similac,

10  which Rule 9(b) also requires.  *Id.*

11  **V.     Tosh-Surryhne Does Not State A Claim Under California's Unfair Competition Law**

12         Cal. Bus. & Prof. Code §§ 17200 *et seq.* (the Unfair Competition Law, or "UCL")

13  prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive,

14  untrue or misleading advertising," and significantly overlaps with the FAL.  Cal. Bus. & Prof.

15  Code § 17200.  Proposition 64 also applies to claims under the UCL.  *See Sevidal v. Target*

16  *Corp.*, --- Cal. Rptr. 3d ----, 2010 WL 4260891, at *2 n.3 (Cal. Ct. App. 2010); Cal. Bus. & Prof.

17  Code § 17204.  Thus, to state a claim under the UCL, a plaintiff must plead that he "(1) suffered

18  an injury in fact and (2) lost money or property as a result of the unfair competition," *Birdsong*,

19  590 F.3d at 959 – i.e., that the defendant's deceptions "played a substantial part . . . in

20  influencing [the plaintiff's] decision."  *Gutierrez*, --- F. Supp. 2d ----, 2010 WL 3155934, at *54

21  (citations omitted).  Furthermore, claims under the UCL premised on false advertising, just like

22  those under the FAL, must be pleaded with particularity.  *See Yumul*, --- F. Supp. 2d at ----,

23  2010 WL 3359663, at *3.  For the reasons already discussed in conjunction with Tosh-

24  Surryhne's FAL claim, her UCL claim fails these requirements.[15]

25  ────────────────

[15]  Paragraph 61 of the Amended Complaint alleges that "Defendants' actions . . . constitute unfair and deceptive

26  business practices under *the common law* and *the laws of each included state*, including, but not limited to[, the

California UCL] . . . ." (emphases added).  The reference to the laws of "each included state" is an artifact of Tosh-

27  Surryhne's original Complaint, which contained now-abandoned claims under the consumer-protection statutes of

numerous states with which Tosh-Surryhne had no connection.  As for the reference to "the common law," to the

28  extent the Complaint intends to assert a common-law unfair-competition claim, it must be dismissed.  That tort

"require[s] a showing of competitive injury," and "is generally thought to be synonymous with the act of 'passing

-16-

**VI.    Tosh-Surryhne Does Not State A Claim For Fraudulent Concealment**

To state a claim for fraudulent concealment, a plaintiff must plead that:

> (1) the defendant . . . concealed or suppressed a material fact, (2) the defendant . . . [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . . . intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff . . . [was] unaware of the fact and would not have acted as he did if he had known of [it], and (5) as a result of the concealment or suppression of the fact, the plaintiff . . . sustained damage.

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850, 100 Cal. Rptr. 3d 537, 652 (Cal. Ct. App. 2009). Allegations of fraudulent concealment are subject to Rule 9(b)'s particularity requirement. *See Tietsworth*, 2009 WL 3320486, at *4; *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008). Tosh-Surryhne's fraudulent-concealment claim is deficient on several grounds.

As an initial matter, as discussed above, the Amended Complaint does not plausibly plead that Tosh-Surryhne sustained any actual "damage" "as a result" of Abbott's actions.

In addition, Tosh-Surryhne does not actually allege that Abbott deliberately concealed the presence of beetles in any Similac product. The Amended Complaint merely asserts that Abbott "*either* knew, recklessly disregarded, *or* reasonably should have known, that their Similac® products were dangerous," at some unspecified point in time. (Am. Compl. ¶ 48) (emphases added). But fraudulent concealment requires more than reckless disregard or negligence – it requires "deliberate concealment of known facts." *Powers v. Optical Radiation Corp.*, 44 Cal. Rptr. 2d 485, 490 (Cal. Ct. App. 1995); *see also Graham v. Taubman*, No. C-74-2518, 1975 WL 448, at *5 (N.D. Cal. Mar. 16, 1976) (failure to inform of a fact which defendant *should have* known not fraudulent concealment, "which must involve an effort to conceal known facts.").

Finally, Tosh-Surryhne's fraudulent-concealment claim does not satisfy Rule 9(b). Her vague, conclusory, and disjunctive assertion that she "is informed and believes . . . that Defendants either knew, recklessly disregarded or reasonably should have known" of the beetle problem at some unspecified time fails to state "the who, what, when, where, and how" of the

---

off' one's goods as those of another." *Bank of the West*, 2 Cal. 4th at 1263-64, 10 Cal. Rptr. 2d 538, 544, 833 P.2d 545, 551 (1992) . Thus, the California Supreme Court has noted that, unlike the UCL, the common law "d[oes] not provide an effective remedy for consumers" to bring suit for unfair business practices. *Id.*

1   charge. Even if she had unambiguously pleaded that Abbott *knew* (and not just "should have

2   known") of the problem *at the time Tosh-Surryhne purchased Similac* (and not just at an

3   unspecified time), she fails to specify any factual basis for that assertion. A plaintiff "cannot

4   establish [fraudulent concealment] by pleading, in a purely conclusory fashion, that a defendant

5   was in a superior position to know the truth about a product and actively concealed the defect";

6   rather, the plaintiff must actually "allege[] *facts* showing that the defendant knew of the alleged

7   defect and did nothing to fix it or alert customers to its existence." *Tietsworth*, 720 F. Supp. at

8   1134 (emphasis added); *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Under

9   Rule 9(b),] a plaintiff who makes allegations on information and belief must state the factual

10  basis for the belief."); *Oestreicher*, 544 F. Supp. 2d at 974 (conclusory allegation that defendant,

11  "as the manufacturer," must have "had . . . knowledge" of the defect does not suffice).[16]

12          As the Court noted in *Oestreicher*, bare allegations of fraudulent concealment such as

13  those asserted here "could be made about any alleged . . . defect in any manufactured product,"

14  and "[t]he heightened pleading requirements of Rule 9(b) were designed to avoid exactly this

15  situation." 544 F. Supp. 2d at 974; *see also Tietsworth*, 2009 WL 3320486, at *4 ("[A]

16  determination in plaintiffs' favor, given plaintiffs' general allegations of . . . knowledge . . . and

17  active concealment of a defect, would mean that any unsatisfied customer could make a [fraud]

18  claim every time a product malfunctioned." (internal quotation marks omitted)).

19  **VII.  The Complaint Does Not State A Claim For Unjust Enrichment**

20          Although the Amended Complaint asserts a claim for "common law unjust enrichment"

21  (Am. Compl. ¶¶ 22-28), "there is no cause of action in California for unjust enrichment."

22  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347, 357

23  (2003). That phrase does not describe a "remedy [in] itself," but rather, "the result of a failure to

24  make restitution . . . where it is equitable to do so" under "various [other] legal doctrines and

25  remedies," none of which Tosh-Surryhne asserts. *Id; see Jogani v. Superior Court*, 165 Cal.

26  _____

27  [16] *Cf. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prod. Liab. Litig.*, --- F. Supp.
    2d ----, 2010 WL 4867562, at *35 (C.D. Cal. Nov. 30, 2010) (holding that fraudulent concealment *was* pleaded with

28  sufficient particularity because "Plaintiffs' allegations include *specific facts showing Toyota's knowledge and
    concealment* of the alleged defect," and noting many such facts (emphasis added)).

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1   App. 4th 901, 911, 81 Cal. Rptr. 3d 503, 511-12 (2008) (dismissing "unjust enrichment" claim

2   and noting that "unjust enrichment is not a cause of action").

3           Furthermore, to the extent the Court is inclined to construe the Amended Complaint as

4   asserting a claim for equitable restitution, a doctrine associated with unjust-enrichment scenarios,

5   *see Melchior*, 106 Cal. App. 4th at 793, 131 Cal. Rptr. 2d at 357, this claim still must be

6   dismissed. "The recipient of [a] benefit is liable [in equitable restitution] only if the

7   circumstances are such that, *as between the two persons*, it is unjust for the recipient to retain it."

8   *Cal. Fed. Bank v. Matreyek*, 8 Cal. App. 4th 125, 131, 10 Cal. Rptr. 2d 58, 61 (1992).  The

9   Amended Complaint does not plausibly plead that there was anything "unjust" about the

10  transaction that took place "between [Tosh-Surryhne] and [Abbott]."

11          Even if Tosh-Surryhne had satisfactorily alleged injury, equitable restitution would be

12  unavailable, because "equitable relief will not be afforded when the plaintiff's remedies at law

13  are adequate to redress his or her injury."  *Ramona Manor Convalescent Hosp. v. Care Enters.*,

14  177 Cal. App. 3d 1120, 1140, 225 Cal. Rptr. 120, 131 (1986).  If Tosh-Surryhne had pleaded

15  injury, her remedy would lie in breach of warranty or under the FAL or UCL.  Therefore, a claim

16  for unjust enrichment would be duplicative and inappropriate.  *See AcraDyne, Inc. v. Travelers*

17  *Cas. & Sur. Co. of Am.*, 263 F. App'x 594, 598 (9th Cir. 2008) ("Insofar as [plaintiff's] unjust

18  enrichment claim was simply an alternative theory for recovery based on a breach of contract, it

19  is duplicative, . . . [and] [s]ummary judgment . . . was proper."); *Nelson v. Mead Johnson*

20  *Nutrition Co.*, 09-CV-61625, slip op. at 13-14 (S.D. Fla. Mar. 8, 2010) ("Plaintiff, in her unjust

21  enrichment claim, seeks recovery for the exact same wrongful conduct as in her [false

22  advertising] claims.  Thus, if Defendants' marketing . . . [is[ misleading, . . . then Plaintiff has a

23  remedy at law. . . ."); *Ramona Manor*, 177 Cal. App. 3d at 1140, 225 Cal. Rptr. at 131 ("[A]n

24  action for unjust enrichment is inappropriate . . . because [plaintiff] can obtain full redress for its

25  loss of profits under its action for [intentional interference with contractual relations].").

26  **VIII.   Tosh-Surryhne Is Not Entitled To Injunctive Relief**

27          The Amended Complaint seeks an injunction.  (Am. Compl. at Prayer for Relief ¶ (e)).

28  While the UCL provides for injunctive relief, such relief "has no application to completed

-19-

1  wrongs absent a showing of threatened future harm or a continuing violation." *Sun*

2  *Microsystems, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 992, 1004-05 (N.D. Cal. 2000); *see Cruz*

3  *v. United States*, 219 F. Supp. 1027, 1043 (N.D. Cal. 2002) (dismissing request for UCL

4  injunction where "the complaint does not allege[] . . . any danger that Wells Fargo might repeat

5  past allegedly illegal acts"). Here, the Amended Complaint makes no allegations remotely

6  suggesting the likelihood of future harm – let alone "irreparable" future harm.  It does not allege

7  or imply that any misconduct is ongoing or likely to recur.  In fact, the opposite is true – FDA

8  determined that Abbott "satisfactorily implement[ed] plans at the [affected] manufacturing

9  facility to correct the situation, and prevent its recurrence."  (Ex. C at 1).

10                                          **CONCLUSION**

11          For the reasons set forth above, Abbott respectfully requests that this Court dismiss the

12  Amended Complaint in its entirety with prejudice.[17]

13

14  Dated:  December 20, 2010              GORDON & REES LLP

15                                         By: /s/ Brian J. Mooney
16                                              BRIAN J. MOONEY
                                                EDWARD FITZGERALD
17                                              Attorneys for Defendant
                                                ABBOTT LABORATORIES, INC.
18  8958100wp

19

20

21

22

23

24

25
_____

26  [17] Dismissal with prejudice may be ordered "[w]hen amendment would be futile." *Stearns*, 2009 WL 1635931, at
    *2.  A court may conclude that amendment would be futile when a plaintiff "ha[s] had a reasonable opportunity to
27  plead an adequate claim but ha[s] failed to do so . . . ." *Id.* at *11.  Abbott's arguments in this memorandum are
    substantially similar, or identical, to the arguments it made in its motion to dismiss Tosh-Surryhne's original
28  Complaint. Confronted with her Complaint's pleading deficiencies, Tosh-Surryhne did not remedy them.  The only
    rational inference is that she could not do so, and accordingly, there is no reason to believe that she can do so now.

ABL/1066282/8960836v.1

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT