1   BRIAN J. MOONEY (SBN: 143795)
    bmooney@gordonrees.com
2   EDWARD FITZGERALD (SBN: 227218)
    efitzgerald@gordonrees.com
3   GORDON & REES LLP
    275 Battery Street, Suite 2000
4   San Francisco, CA  94111
    Telephone:  (415) 986-5900
5   Facsimile:  (415) 986-8054

6   *APPEARING PRO HAC VICE:*
    JOHN D. WINTER (NY SBN: 1825116)
7   jwinter@pbwt.com
    WILLIAM F. CAVANAUGH (NY SBN: 1715481)
8   wfcavanaugh@pbwt.com
    PATTERSON, BELKNAP, WEBB, & TYLER LLP
9   1133 Avenue of the Americas
    New York, NY 10036
10  Telephone:  (212) 336-2000
    Facsimile:  (212) 336-2222

11
    Attorneys for Defendant
12  ABBOTT LABORATORIES INC.

13

14                     UNITED STATES DISTRICT COURT

15                    EASTERN DISTRICT OF CALIFORNIA

16  JESSICA L. TOSH-SURRYHNE, individually )   CASE NO.  10-cv-02603-KJM-EFB
    and on behalf of all others similarly situated; )
17                                             )   **DEFENDANT ABBOTT**
                                               )   **LABORATORIES INC.'S**
18              Plaintiff,                      )   **MEMORANDUM OF LAW IN**
                                               )   **SUPPORT OF MOTION TO DISMISS**
19              vs.                             )   **FOR MOOTNESS PURSUANT TO FED.**
                                               )   **R. CIV. P. 12(b)(1)**
20  ABBOTT LABORATORIES INC. d/b/a             )
    ABBOTT SALES, MARKETING &                  )
21  DISTRIBUTION CO., a Delaware corporation,  )   Date:   August 10, 2011
                                               )   Time:   10:00 a.m.
22              Defendant.                      )   Court: Hon. Kimberly J. Mueller
                                               )
23                                             )   Accompanying Documents: Notice of
                                               )   Motion; Request for Judicial Notice; Decl. of
24                                             )   Laurie A. Boogaard; Supplemental Decl. of
                                               )   Laurie A. Boogaard; Appendix of
25  _____ )   Unpublished Authorities

26

27

28

DEF'T ABBOTT LABORATORIES INC.'S MOTION TO DISMISS FOR MOOTNESS UNDER RULE 12(B)(1)
4399533v.1
4821989v.1

1    Defendant Abbott Laboratories Inc. ("Abbott") respectfully submits this memorandum in

2    support of its motion to dismiss the Complaint of Plaintiff Jessica L. Tosh-Surryhne ("Tosh-

3    Surryhne") as moot pursuant to Fed. R. Civ. P. 12(b)(1).

4    **PRELIMINARY STATEMENT**

5    Abbott's motion pursuant to Rule 12(b)(6) to dismiss this case on a variety of grounds is

6    currently pending before this Court.  However, since Abbott's motion was briefed, it has become

7    clear that this case is moot, and was moot even at the time it was filed.  Tosh-Surryhne sues

8    solely to recover purported *economic* damages she suffered as a result of purchasing recalled

9    Similac infant formula.  However, Abbott's recall included a full refund, as well as additional

10   merchandise and coupons of considerable value.  Tosh-Surryhne spoke personally to Abbott's

11   representatives before filing this suit, was made aware of this refund, and stated that she intended

12   to pursue it.  As a judge in the Central District of California recently held in case premised on the

13   same recall, Abbott's offer of a refund moots any restitution claim a purchaser of recalled

14   Similac might have had, regardless of whether that purchaser accepts the refund.  Thus, this

15   action is moot, and must be dismissed for lack of subject-matter jurisdiction.

16   **BACKGROUND**

17   A.    **Pre-Litigation Events**

18   Abbott, a Delaware corporation with its principal place of business in Illinois,

19   manufactures, markets, distributes, and sells Similac-brand infant formula products.  *See* Am.

20   Compl. ¶ 4.  In September 2010, during an internal quality review at a single manufacturing

21   plant in Sturgis, Michigan, Abbott discovered the possible presence of "a common warehouse

22   beetle" in containers of certain finished Similac products.  *See* Ex. A (September 23, 2010 FDA

23   Press Release) at 1; Ex. B (September 27, 2010 FDA Press Release) at 1.[1]  Abbott "immediately

24   ceased production [at the Sturgis plant] when this problem was discovered and put all product

25

26   ───────────────
     [1] Attached as Exhibits A-D to the Request for Judicial Notice filed concurrently herewith are four official FDA press
     releases.  A court "may take judicial notice of the press releases of government agencies."  *McLoughlin v. People's*
27   *United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008); *see also In re Zyprexa Prods. Liab. Litig.*, 549 F. Supp.
     2d 496, 501 (E.D.N.Y. 2008) (taking notice of publicly released FDA documents in deciding motion to dismiss);
28   *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, No. 04-CV-1030 (RPM), 2005 WL 4161977, at *2 (D. Colo. Oct. 20,
     2005) (same).

-1-

1  manufactured [there] on hold." Ex. B at 2.

2  FDA determined that formula containing beetles "pose[d] no immediate health risk," Ex.

3  D (October 26 FDA Press Release II) at 1, other than a possibility "of gastrointestinal discomfort

4  and refusal to eat . . . ." Am. Compl. ¶ 11; Ex. D at 1.  FDA advised parents to consult a

5  physician only "[i]f symptoms persist[ed] for more than a few days," and "reassure[d] [the

6  public] . . . that drinking the formula [would] not cause long-term health problems." Ex. A at 1;

7  Ex. B at 1.

8  After conducting a "facility inspection, root cause investigation, and finished and in-

9  process infant formula powder test," Ex. D at 1, Abbott on September 22, 2010 announced a

10  voluntary recall of "[c]ertain Similac brand, powdered infant formulas." Am. Compl. ¶ 11; Ex.

11  C (October 26, 2010 FDA Press Release I) at 1; Ex. E (Abbott September 22, 2010 Recall

12  Notice) at 1.[2]  The recall was limited to units of product bearing lot numbers indicating that they

13  were manufactured at the affected production area of the Sturgis plant. *See* Ex. B at 1; Ex. C at

14  2; Ex. E at 1.  Importantly, because warehouse beetles had not uniformly gained access to *every*

15  *single* unit of product at the affected production area, any given container of recalled Similac had

16  only a "remote possibility" of actually containing warehouse beetles.  Ex. E at 1; Ex. A at 1.

17  As part of its recall, Abbott offered a "full refund" to anyone who returned recalled

18  Similac, whether that product actually contained beetles or not. *See* Ex. A at 1; Ex. B at 1; Ex. E

19  at 1; Declaration of Laurie A. Boogaard ("Boogaard Decl.") ¶¶ 10-21.[3]  Abbott sent each

20  participant a refund check, as well as a $15 coupon toward the future purchase of any Similac

21  product, and until October 7, 2010 – by which time Tosh-Surryhne had already filed this lawsuit

22  – a code redeemable online for a free hardcover photo album with a retail value of $29.99. *Id.* ¶¶

23  _____

24  [2] Attached as Exhibit E to the Request for Judicial Notice is Abbott's September 22, 2010 Recall Notice. This Court may take judicial notice of it because the "complaint expressly mentions the recall" and the recall is central to

25  Plaintiffs' claims. *Maness v. Boston Scientific*, --- F. Supp. 2d ---, 2010 WL 4629984, at *7 (E.D. Tenn. Nov. 4, 2010).  Alternatively, the Court may take notice of it because it is a "matter[] of public record" and its "authenticity .

26  . . is not [subject to] contest." *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

27  [3] Because mootness is a jurisdictional issue, the Court "is not restricted to the face of the pleadings" in evaluating it, "but may review any evidence, such as affidavits and testimony, to resolve [relevant] factual disputes . . . ." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  In the alternative, although it is not necessary,

28  Abbott does not object to the conversion of this motion into one for summary judgment.

DEF'T ABBOTT LABORATORIES INC.'S MOTION TO DISMISS FOR MOOTNESS UNDER RULE 12(B)(1)
4821989v.1

1    11-12, 19.  As of May 3, 2011, Abbott had issued approximately $7,142,000 in refund checks to

2    recall participants, and had also refunded over $77,000,000 to retailers, some of which has been

3    used to compensate consumers who chose to return their recalled Similac to the place of

4    purchase rather than directly to Abbott.  *Id.* ¶¶ 20-22.

5         At unspecified times "[i]n 2010," Tosh-Surryhne purchased an unstated number of

6    Similac products.  Am. Compl. ¶ 5.  She "began feeding this formula to her infant son on or about

7    July 30, 2010 and continued to do so until . . . late September 2010" when she learned of the

8    recall.  *Id.*  Two containers she purchased had lot numbers which were part of the recall.  *Id.*  She

9    does not allege that she purchased any recalled containers other than these two.

10        On September 23, 2010, Tosh-Surryhne placed a telephone call to Abbott's Similac

11   hotline.  Boogaard Decl. ¶ 23.[4]  During that call, Abbott's representative told Tosh-Surryhne that

12   there are "two ways that you can go about" returning recalled Similac for a refund, and that "you

13   can just choose whatever's easiest for you."  *Id.* ¶ 28.  Abbott's representative told her she could

14   "return [the recalled product] back to the place of purchase, whether or not you have your

15   receipt."  *Id.* ¶ 29.  Tosh-Surryhne responded, "I'm going to.  I'm . . . fully prepared to do that."

16   *Id.*  Abbott's representative explained that the store would likely be able to provide substitute

17   product or credit her for her purchase based on its records.  *Id.*  In the alternative, Abbott's

18   representative directed her to Abbott's recall website.  The representative explained to her how

19   to fill out the return form online and stated that once Abbott received the recalled product by

20   mail, "the reimbursement [would be] handled."  Tosh-Surryhne responded, "Okay."  *Id.* ¶ 30.

21        Both before and after Abbott's representative explained the reimbursement process,

22   Tosh-Surryhne threatened to "get a lawyer" or file a lawsuit.  She also stated twice that she was

23   "going to school to be a lawyer" herself.  *Id.* ¶ 31.  On September 24, 2010, the day after her call

24   to Abbott, Tosh-Surryhne filed this lawsuit.

25

26   _____

[4] In a discovery proceeding before the magistrate judge, Tosh-Surryhne challenged the admissibility of this
27   conversation on the grounds that (1) the Boogaard Declaration did not make clear that the conversation was recorded
     consensually, and (2) the Boogaard Declaration did not make clear that Ms. Boogaard had personal knowledge.
28   Both of these deficiencies – if they are indeed deficiencies – are addressed by the Supplemental Declaration of
     Laurie A. Boogaard filed concurrently herewith.

DEF'T ABBOTT LABORATORIES INC.'S MOTION TO DISMISS FOR MOOTNESS UNDER RULE 12(B)(1)
4821989v.1

1    **B.**      **Post-Litigation Developments**

2        Abbott moved to dismiss pursuant to Rule 12(b)(6) on November 15, 2010.  Briefing on

3 that motion was completed on January 21, 2011.  At that point, Abbott's counsel was not yet

4 fully aware of all of the details of Abbott's refund offer, as described in the Boogaard

5 Declaration, or of the fact that a recorded conversation existed between Tosh-Surryhne and

6 Abbott.

7        Subsequently, Abbott briefed motions to dismiss in other cases pertaining to the

8 September 2010 Similac recall, including *Vavak v. Abbott Laboratories*, 10-1995 JVS (RZx)

9 (C.D. Cal.).[5]  In the *Vavak* motion, Abbott explicitly argued that its refund offer mooted any

10 restitution claim that might otherwise have existed.  On June 17, 2011, the *Vavak* Court issued a

11 decision taking judicial notice of the Boogaard Declaration and dismissing with prejudice all of

12 the plaintiff's restitution-based claims.  *See Vavak, supra*, slip op. at 1, 4-5.  In particular, the

13 Court held that "[b]ecause Abbott offered a full refund to consumers who purchased infant

14 formula from the affected lots, Plaintiff's request for restitution of the monies spent on the

15 product is moot.  That Plaintiff rejected a full refund and opted to file suit does not change this

16 result."  *Id.* at 5 (internal citation omitted).

17        On June 29, 2011, after considering the *Vavak* decision and Abbott's argument that this

18 case is moot, Magistrate Judge Brennan, ruling from the bench, granted Abbott a protective order

19 relieving it of the obligation to respond to Tosh-Surryhne's discovery requests.[6]

20 **ARGUMENT**

21 **I.**      **Legal Standard For Mootness**

22        "It goes without saying that those who seek to invoke the jurisdiction of the federal courts

23 must satisfy the threshold requirement imposed by Article III of the constitution by alleging an

24 actual case or controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  The

25 "mootness of a case or controversy . . . ousts the jurisdiction of the federal courts and requires

26

27 [5] A copy of the *Vavak* decision is attached to the Appendix of Unpublished Authorities filed concurrently herewith.

28 [6] The hearing is reflected at Docket Entry No. 54.  At this time, Magistrate Judge Brennan's ruling does not yet appear on the docket.

-4-

DEF'T ABBOTT LABORATORIES INC.'S MOTION TO DISMISS FOR MOOTNESS UNDER RULE 12(B)(1)
4821989v.1

1    dismissal of the case." *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 335 (1980).  A

2    case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally

3    cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388,

4    396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  "[T]he party invoking

5    federal jurisdiction" – here, Tosh-Surryhne – "has the burden of establishing that [she] has

6    satisfied the 'case-or-controversy' requirement . . . ." *D'Lil v. Best Western Encina Lodge &*

7    *Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008).

8         While Abbott did not fully brief the mootness issue in its original Motion to Dismiss, it

9    has long been settled that, because a federal court may not act in the absence of jurisdiction,

10   "[c]hallenges to subject-matter jurisdiction" – including assertions of mootness – "can . . . be

11   raised at any time prior to final judgment." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541

12   U.S. 567, 571 (2004) (citing *Capron v. Van Noorden*, 2 Cranch 126 (1804)).  Indeed, because

13   they are so fundamental, "subject-matter delineations must be policed by the courts on their own

14   initiative." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).[7]  In order to ensure the

15   mootness issue is squarely before this Court, and to further ensure this Court and the parties have

16   the advantage of a full briefing on this issue, Abbott hereby submits this motion.

17   **II.    This Case Is Moot**

18        Tosh-Surryhne begins her Amended Complaint with the express disclaimer that

19   "damages for personal injuries . . . are not within the scope of this case." Am. Compl. pmbl.

20   Instead, she seeks only "disgorgement and restitution of [Abbott's] ill-gotten gains acquired as a

21   result of" the alleged mismarketing of recalled Similac infant formula. *Id.* ¶ 28 & Prayer for

22   Relief; *see also* Joint Status Report (Dkt. No. 34) at 2 ("Plaintiff's First Amended Complaint

23   asserts no claims for personal injuries suffered by infants.  Rather, Plaintiff seeks restitution of

24   money paid by putative class members for Defendants' Similac ® products.").  However, as the

25   *Vavak* Court held, "[b]ecause Abbott offered a full refund to consumers who purchased infant

26

27   _____

28   [7] Although Abbott did not argue mootness *per se* in its 12(b)(6) motion, it did question "how Tosh-Surryhne purports to assert a good-faith claim for the lost economic value of her purchases, or those of other class members," given Abbott's refund.  Reply Mem. in Support of Abbott's Mot. to Dismiss (Dkt. No. 27) at 2 n.3.

DEF'T ABBOTT LABORATORIES INC.'S MOTION TO DISMISS FOR MOOTNESS UNDER RULE 12(B)(1)
4821989v.1

1   formula from the affected lots, [any] request for restitution of the monies spent on the product is

2   moot." *Vavak*, supra, slip op. at 5.[8]

3          Notably, because Abbott *tendered* a refund to Tosh-Surryhne, her claim for restitution is

4   moot, even if she did not follow through with her stated plan to claim that refund. *See Gates v.*

5   *City of Chicago*, 623 F.3d 389, 413 (7th Cir. 2010) ("[Defendant] tendered the full amounts the

6   plaintiffs requested . . . before the plaintiffs even added these claims to their complaints. That

7   tender ended any dispute over restitution, and the plaintiffs cannot revive it by simply refusing

8   the tender."); *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) ("[A plaintiff] may

9   not spurn [a defendant's] offer . . . and proceed to trial. Once the defendant offers to satisfy the

10  plaintiff's entire demand, there is no dispute over which to litigate . . . ." (internal quotation

11  marks and citations omitted)).[9]  The *Vavak* Court recognized as much. *See Vavak*, supra, slip op.

12  at 5 ("That Plaintiff rejected a full refund and opted to file suit does not change this result.").

13         In the discovery proceedings before Magistrate Judge Brennan, Tosh-Surryhne asserted

14  that this case is not moot because recall participants ostensibly "receive reimbursement [only] for

15  the affected products that they are able to return."  Joint Statement of Discovery Disagreement

16  (Dkt. No. 44) at 4 (emphasis omitted).  As the Boogaard Declaration makes clear, this is not

17  correct.  Abbott's policy with respect to consumers who claim to have purchased recalled

18  formula but who cannot produce the container is to provide a refund for up to three units,

19  provided the customer has proof of the purchases.  Because a customer's receipt proves merely

20  that she purchased *some* Similac product, and not that the product came from a recalled lot, this

21

22

23

---

24  [8] Although it did not use the word "moot," another federal court has also recognized that Abbott's refund offer requires dismissal of any restitution claims premised on Abbott's Similac recall. *See Jovine v. Abbott Labs., Inc.*, ---

25  F. Supp. 2d ----, 2011 WL 1376029, at *8 (S.D. Fla. Apr. 12, 2011) ("Plaintiff cannot plausibly allege that he suffered damages insofar as the amount he paid for the product," because "Defendants would return to Plaintiff the

26  money he paid" pursuant to recall).

27  [9] *See also Harris v. Messerli & Kramer, P.A.*, No. 06-CV-4961, 2008 WL 508923, at *2 (D. Minn. Jan. 2, 2008); *Taylor v. XM Satellite Radio*, 533 F. Supp. 2d 1151, 1155 (N.D. Ala. 2007); *Thomas v. Interland, Inc.*, No. 1:02-

28  CV-3175CC, 2003 WL 24065651, at *3 (N.D. Ga. Aug. 25, 2003).

DEF'T ABBOTT LABORATORIES INC.'S MOTION TO DISMISS FOR MOOTNESS UNDER RULE 12(B)(1)
4821989v.1

1   policy almost certainly results in the payment of refunds to many claimants whose discarded

2   formula was not recalled, let alone actually contaminated.[10]

3         Anticipating Abbott's present motion, Tosh-Surryhne submitted a motion for leave to

4   supplement her briefing in opposition to Abbott's original 12(b)(6) motion. *See* Dkt. No. 55.  In

5   that submission, she argues that Abbott's refund offer does not moot this case because it does not

6   provide compensation to individuals who discarded their recalled Similac containers and lack

7   proof of purchase for those containers.  This cannot be taken seriously – as evidenced by Judge

8   Selna's failure to dwell on this possibility for even a moment in the *Vavak* decision.

9         First of all, the Amended Complaint does not plead that Tosh-Surryhne is in the position

10  she describes.  It pleads that she purchased an unspecified number of Similac containers, and that

11  *two* of them – no more – were "subject to [Abbott's] ongoing recall."  Am. Compl. ¶ 5.  She

12  provides the lot numbers listed on the bottom of those two containers, precluding any inference

13  that she has discarded them (and she certainly does not affirmatively claim to have discarded

14  them).  *See id.*  To the extent the Amended Complaint could be construed as alleging that Tosh-

15  Surryhne purchased additional Similac containers beyond these two, it certainly does not allege

16  that those other containers also had lot numbers that were part of the recall, that they actually

17  contained beetles, that she has discarded those containers, or that she lacks proof of purchase for

18  those containers.  In short, nothing in the Amended Complaint suggests that Tosh-Surryhne

19  belongs to the class of people Abbott's refund offer allegedly undercompensates.

20        Moreover, even if she *did* make such an allegation, a consumer who has discarded her

21  Similac container, by definition, can produce neither the lot number showing that the container

22  was recalled, nor the contents of that container showing that the formula therein was actually one

23  of the few recalled containers that actually contained beetles.  And a consumer who lacks both

24  the recalled container *and any proof she purchased Similac in the first place* is even worse-

25  positioned to recover.  Such a plaintiff – again, by definition – could never produce evidence to

26    [10] As Abbott has already argued in its Motion to Dismiss, the bare fact that a product is the subject of a recall notice

27  does not establish that the product was actually defective.  To establish economic loss with respect to a particular
    container, Tosh-Surryhne would have to prove that the container in question *actually contained beetles.  See* Mem.

28  in Support of Abbott's Mot. to Dismiss (Dkt. No. 14) at 1, 5-6 & n.4.  In other words, Tosh-Surryhne is not
    automatically entitled to a refund for all recalled Similac that she may have purchased.

1  establish Abbott's liability, no matter how much discovery Abbott provides, as *Abbott* has no

2  omniscient knowledge as to which end-consumers purchased formula that contained beetles and

3  which did not.  A plaintiff in this position is inherently incapable of "rais[ing] a reasonable

4  expectation that discovery will reveal evidence" of Abbott's liability.  *Bell Atl. Corp. v.*

5  *Twombly*, 550 U.S. 544, 556 (2007).  Thus, no person in the position Tosh-Surryhne describes

6  could ever survive a motion to dismiss, let alone actually recover.

7         Furthermore, even if some unknown member of the putative class might theoretically be

8  undercompensated by Abbott's refund offer, that does not save this case from mootness.  Named

9  plaintiffs in a putative class action "must allege and show that *they personally* have been injured,

10 not that injury has been suffered by other, unidentified members of the class to which they

11 belong and which they purport to represent."  *Warth v. Seldin*, 422 U.S. 490, 502 (1975)

12 (emphasis added).  Because Tosh-Surryhne "can[not] . . . demonstrate the requisite case or

13 controversy between [herself] personally and [Abbott]," she "may [not] seek relief on behalf of

14 . . . other member[s] of the class" who might theoretically have been undercompensated.  *Id.*

15        The Article III case-or-controversy requirement "plays a critical role," and "[n]o principle

16 is more fundamental to the judiciary's proper role in our system of government . . . ."

17 *DiamlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006).  Thus, when the existence of a

18 case or controversy is challenged, the plaintiff bears the affirmative "burden of establishing that

19 [it is] satisfied" before a court may proceed any further.  *D'Lil*, 538 F.3d at 1036.  Mere

20 hypotheticals are not enough – Tosh-Surryhne must adduce actual *evidence* that a case or

21 controversy exists.  *McCarthy*, 850 F.2d at 560.  Here, she must provide affirmative evidence

22 that she purchased recalled *and actually defective* containers of Similac not covered by Abbott's

23 refund offer.  She has not done so, and by definition, she cannot do so.  In fact, the only people

24 whom Abbott's offer purportedly undercompensates are those who inherently lack any evidence

25 that they purchased a recalled product, let alone a defective one.

26        In sum, Tosh-Surryhne was offered everything she now requests and more, *in person*,

27 before her Complaint was filed.  This action simply has no business on the Court's docket.  It

28 must be dismissed.

-8-

1

## CONCLUSION

2          For the reasons described above, Abbott requests that the Court dismiss Tosh-Surryhne's

3    First Amended Complaint in its entirety, and with prejudice. *See Vavak*, supra, slip op. at 8

4    (dismissing restitution claims "with prejudice").

5

6    Dated:  July 11, 2011                     GORDON & REES LLP

7                                              By: /s/ Brian J. Mooney
                                                   EDWARD FITZGERALD
                                               Attorneys for Defendant
8                                              ABBOTT LABORATORIES INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF'T ABBOTT LABORATORIES INC.'S MOTION TO DISMISS FOR MOOTNESS UNDER RULE 12(B)(1)
4821989v.1